## MORSE TWIST DRILL & MACHINE COMPANY *vs.* STEPHEN A MORSE.

A covenant, made by the patentee of a process of manufacture in a business not local ₋n its character, for the purpose of selling the patent to better advantage, and as a part of the transaction of sale, and for one and the same consideration received by him for the patent, to use his best efforts to invent improvements in the process and to transfer them to the buyer, to do no act which may injure the buyer or the business, and "at no time to aid, assist or encourage in any manner any competition against the same," is not necessarily void as in restraint of trade.

CHAPMAN, C. J.   As the case comes before us on demurrer to the plaintiff's bill in equity, the allegations of the bill must be taken to be true.

The plaintiffs seek to restrain the defendant from violating an agreement made between the parties June 22, 1864. The defendant covenants therein that he will convey to the plaintiffs two patents which have been issued to him for improvements made by him in " twist drills and collets ; " also his machinery and tools; also his rights of renewal and extension of the patents ; his rights to letters patent for his machinery and inventions for making drills and collets, or parts thereof, or for any portions of, or principles or combinations used in, such machinery or inventions. He warrants his title to the patents and the property sold, and agrees to make all necessary assignments and conveyances. He also agrees to transfer to them all improvements, new modes of manufacture, inventions and arrangements, relating to any of the premises and the general business of the company, that he may make or invent, and that he will use his best efforts for the perfecting of improvements in the business and manufacture, and for such alterations and combinations as may tend to insure the success of the same and of the company ; and he also covenants to do no act that may injure the company or its business, and that he will at no time aid, assist or encourage in any manner any competition against the same. He agrees to serve as the superintendent of the company for three years from July 1, 1864, perform such duties as shall be assigned to him, and give his whole time and efforts for building up the business of the company.

In consideration of these covenants, the company covenants to pay him $5000 in thirty days; and $5000 more out of the net earnings and profits of the business after paying certain dividends; and $1500 per year for the term of three years, payable monthly.

The defendant had obtained his patents and commenced manufacturing the articles; but, being unable to carry on the business successfully, he induced certain persons to unite with him in forming the company and carrying on the business of manufacturing and selling the articles. They proceeded in the business, and this business was not intended to be, and was not, local in its character. They employed him for the three years, and agreed with him to continue in their service for another year. But in December 1868 he resigned his office of superintendent; and though the plaintiffs continue to carry on their business and sell their twist drills and collets, the defendant has transferred his stock in their company, and entered into the manufacture of other twist drills and collets in Newark, New Jersey, which he sells in the same markets, in competition with them, at reduced prices, and to the same persons who dealt with the defendant as the plaintiffs' superintendent, and endeavors to supply the markets with these articles.

The defendant demurs, on the alleged ground that his covenants are in restraint of trade, contrary to public policy, and void, and that therefore he has a legal right to disregard them. The principle on which the defence rests has been much discussed, and, since the case of *Mitchel* v. *Reynolds*, 1 P. W. 181, it has been well established in England. It is also established in this Commonwealth. See *Taylor* v. *Blanchard*, 13 Allen, 370, and cases cited. The question now before us is, whether it extends to a case like the present.

It has never been extended to a business protected by a patent. Therefore, so far as any interference with the plaintiffs' patents is concerned, the covenants are not in restraint of trade. But it is not alleged that the defendant does infringe their patents; and thus the case does not rest on that ground.

Nor does it extend to a business which is a secret, and not known to the public; because the public has no rights in the secret. *Bryson* v. *Whitehead*, 1 Sim. & Stu. 74. *Peabody* v. *Norfolk*, 98 Mass. 452. All future inventions and improvements which the defendant might make would necessarily be of this character; for if they were not then secret, they would not be new inventions or improvements. Some of them might not be patented, yet the defendant bound himself to use them exclusively for the benefit of the plaintiffs.

The language of the contract implies that, when the plaintiffs joined the defendant in his new business, they had confidence in his mechanical skill and ingenuity, and intended to avail themselves of it for the benefit of the business in which he induced them to embark; and that it was a material part of the consideration for which they paid him so considerable a sum and invested their capital. It was not in restraint of trade, nor contrary to public policy, that the defendant should contract to render to the plaintiffs his exclusive services in this respect. This part of the contract he is alleged to have violated. And although the defendant did not technically become a partner with the plaintiffs, yet he became the associate of the other stockholders in the business, he himself inducing them to join him in it, and having a large interest in the formation of the company; and the same principle that enables a partner to bind himself to do nothing in competition with the business of the firm ought to apply to him.

In *Taylor* v. *Blanchard*, cases were suggested in which the restriction would be valid, if it did not extend beyond the limits of the good will of the business which was the subject of the sale, even if it covered the whole state. In some of the English cases, it had been said that the contract was valid unless it imposed some restriction beyond what the interest of the party required. *Tallis* v. *Tallis*, 1 El. & Bl. 391. *Mallan* v. *May*, 11 M. & W. 653, 667. But in these cases the restriction was local. In former times, almost every species of business that was carried on was of a local character; but there are some recent English cases in which the principle has been considered with reference to business which was not local.

In *Ainsworth* v. *Bentley*, 14 Weekly Rep. 630, the plaintiff had in 1851 purchased of the defendant " Bentley's Miscellany," which was then an established magazine. He took an agreement that the defendant would not publish another periodical of a like nature. In 1865, the defendant entered into an arrangement to become the publisher of " Temple Bar," a periodical of a like nature, and within the restriction. It was objected that the agreement was void, being in restraint of trade and unlimited, and that magazine publishing was a trade of itself. But Vice Chancellor Wood granted an injunction against violating the contract.

In *Stiff* v. *Cassell*, 2 Jur. (N. S.) 348, the defendant agreed with the plaintiff to write two tales for a periodical paper, and that he would not write for any other publication which should be sold for less than a certain price, for the space of a year. The restriction was held to be valid, though it had no limitation as to space.

In *Ingram* v. *Stiff*, 5 Jur. (N. S.) 947, a weekly periodical was sold, with an agreement by the vendor not to publish, either alone or in partnership, any other periodical of a nature similar to it. This agreement was held to be valid, and was enforced by injunction.

In these cases, the restriction, though extending through the whole kingdom, was obviously no greater than the interest of the vendee required; and, by giving it, the vendor had been able to obtain an enhanced price for what he sold.

In *Leather Cloth Co.* v. *Lorsont*, Law Rep. 9 Eq. 345, a company had been formed for the purpose of working a certain process of manufacture, introduced into Great Britain from America. They purchased the right, with an agreement of the vendors that they would not, directly or indirectly, carry on, nor would they, to the best of their power, allow to be carried on by others, in any part of Europe, any company or manufactory having for its object the manufacture or sale of productions therein manufactured in the business or manufacture of the vendors, and would not communicate to any person or persons the means or processes of such manufacture, so as in any way to interfere with the exclusive enjoyment by the purchasing

company of the benefits agreed to be purchased. It was held that the restraint was not greater, having regard to the subject matter of the contract, than was necessary for the protection of the purchasers; and it was enforced against the vendors. The decision acknowledges the principle that contracts are void, if their object is to deprive the state of the benefit of the labor, skill or talent of a citizen. But the court say that, on the other hand, public policy requires that when a man has, by skill or other means, obtained something that he wants to sell, he should be at liberty to sell it in the most advantageous way in the market, and, in order to enable him to do this, it is necessary that he should be able to preclude himself from entering into competition with the purchaser, provided the restriction is not unreasonable. He may not have any more restraint than is necessary for the benefit of the purchasers, but to that extent he may have it.

In this country, there are periodical publications that have a very wide circulation; and it is obvious that a purchaser of the proprietorship cannot afford to pay the full value, unless he can obtain from the vendor a valid restriction against competition, which restriction shall be as extensive as his interest requires, though it may cover the whole of a state, or the whole country. The same would be true as to some books. For example, the author of a popular school book could not sell its proprietorship for its full value, unless he could bind himself not to prepare another book which should be used in competition with it.

The same would be true as to some manufactured articles. The present case furnishes an illustration. The defendant could not have obtained the consideration which was paid him, if it had been understood that this contract which he has violated had no validity. He is appropriating to himself a part of that which he has sold to the plaintiffs, and which is valuable property to them. It is unlike the cases where the prohibition extends beyond what the interests of the purchaser require, or is in any way unreasonable. The court are of opinion that the contract is valid. *Demurrer overruled.*

*P. E. Tucker*, (*B. W. Harris* with him,) for the defendant.
*T. D. Eliot & T. M. Stetson*, for the plaintiff.