ANCHOR ELECTRIC COMPANY & others *vs.* HORATIO
C. HAWKES.

Suffolk.    March 24, 25, 1898. — May 18, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Valid Agreement not to compete in Business — Public Policy.*

H., M., and R., each of whom was the business manager of a corporation and a shareholder therein, on September 29, 1894, agreed in writing to form a new corporation, of which they were to be officers and directors.    Each corporation was to sell its assets and good will to the new corporation, and each of these persons was to take one third of the capital stock of the new corporation and devote himself unreservedly to its interests.    There was also a stipulation as to salaries, the allowance for assets of the three corporations, and as to the agreement being binding on approval of a majority of the shareholders or boards of directors of the three corporations.    The A. Company was duly incorporated in accordance with the contract.    On October 12, 1894, a written agreement was made between the A. Company and the other three corporations, whereby the assets and good will of the three were transferred to the A. Company, and the three agreed to discontinue business.    The agreement, which was signed by each of the four corporations and by their officers, H., M., and R., contained the following stipulation : " 6. It is further agreed by all the persons whose names are set hereunder, officers of the corporations herein above described, that they will

not hereafter at any time, directly or indirectly, as partner, agent, officer of a corporation, or in any other wise, enter into or conduct or assist in conducting any business that shall in any way interfere with or compete with the proposed business of said A. Company for a period of five years ; except that any one of said persons sever connection with said A. Company as provided by paragraph six of said agreement of September 29, 1894." The A. Company brought a bill in equity to restrain H. from competing with it contrary to article 6. The judge found that the instrument had been executed except this article, and had been adopted by the corporations; that the defendant sold his stock in the new corporation and withdrew from it, contrary to an article in the contract of September 29, to the effect that any one of the three could, in a certain event, sell his stock in the new corporation to the others at a price to be agreed upon or fixed by arbitration ; that the defendant had violated and intended to violate article 6 of the contract of October 12; that all the allegations of the bill as to the validity of this article were proved; that, so far as he could find, this article was reasonable and necessary for carrying out the agreement; that the value of the stock of H.'s company was largely dependent upon the keeping of this agreement and the business of the A. Company was of a nature that might extend over the whole country. *Held,* that the stipulation of article 6 of the contract of October 12 was valid.

BILL IN EQUITY, filed February 1, 1898, to restrain the defendant from competing with the plaintiffs in violation of a contract. Hearing before *Holmes,* J., who ordered an injunction against the defendant carrying on business in Boston, where he had established himself, or the vicinity, and, at his request, reported the case to the full court. If the ruling was right, the injunction was to stand, and the case was to go to a master to assess damages , otherwise, such decree was to be made as equity might require. The facts appear in the opinion.

*F. Hutchinson,* for the defendant.

*S. L. Whipple,* ( *W. R. Sears* with him,) for the plaintiffs.

KNOWLTON, J. The only question which we need to discuss in this case is whether the stipulation on which the bill is founded is void as against public policy. The stipulation is as follows: " 6. It is further agreed by all the persons whose names are set hereunder, officers of the corporations herein above described, that they will not hereafter at any time, directly or indirectly, as partner, agent, officer of a corporation, or in any other wise, enter into or conduct or assist in conducting any business that shall in any way interfere with or compete with the proposed business of said Anchor Electric Company for a period of five years ; except that any one of said persons sever connection with said Anchor Electric Company as provided by paragraph six of

said agreement of September 29, 1894." The defendant was the business manager of the Hawkes Electric Company, a corporation, and a shareholder therein; Norman Marshall was the business manager of the Iona Manufacturing Company, a corporation, and a shareholder therein; and Philip M. Reynolds was the business manager of the Brown Electric Company, a corporation, and a shareholder therein. On September 29, 1894, these three persons entered into an agreement in writing to form a new corporation under the laws of Maine, of which Hawkes was to be the president, Reynolds the treasurer, and Marshall the vice president and assistant secretary, and of which these three were to be the managing board of directors. Four other persons were to be selected to make up the full board of directors, of whom one was to be chosen from the board of directors of each of the above mentioned corporations. Each of these corporations was to sell all its assets to the new corporation, at their actual cash value, to be determined as provided in the writing, and an agreed price of a substantial amount fixed by the writing was to be allowed by the new corporation for the good will of each of the three corporations. Each of these three persons was to subscribe for and take one third of the capital stock of the new corporation, and the assets of each of the three corporations, at the value ascertained as provided by the writing, were to be received *pro tanto* by the new corporation in payment for this stock, and the balance was to be paid for by the subscribers in cash. The three persons severally agreed that so long as the agreement should continue they would "devote themselves unreservedly to the interest and duties of the office which they occupy and the promotion in every way of the interests of the corporation to be formed." On the back of the writing was an agreement, signed by the three, fixing the salaries which they were severally to receive in the new corporation, and an additional stipulation as to the allowance for assets of the three corporations. It was provided that the agreement should be binding only as approved by a majority of the shareholders or boards of directors of the three corporations. The Anchor Electric Company was afterwards established as a corporation under the laws of Maine, in accordance with the contract. In this connection there was another agreement made on October 12, 1894, between the Anchor

Electric Company and the other three corporations, whereby the assets and good will of the three were transferred to the new corporation at specified agreed prices, which were paid in stock of the new corporation. A part of this agreement of the three old corporations with one another and with the Anchor Electric Company was in these words: "They will not hereafter at any time continue the business of manufacturing and dealing in electrical goods or specialties of any sort or description, after the fifteenth day of October, 1894, except to sell and dispose of merchandise on hand at this date not herein transferred to the Anchor Electric Company, and will do no business of any sort or description except such as is necessary in the liquidation of said three electric companies." The agreement was signed by each of the four corporations, by their respective officers, Hawkes, Reynolds, and Marshall, and the stipulation in question was the sixth article of the agreement. The judge found that the instrument had been executed in all its parts, except this sixth article, and had been adopted by the corporations. There was a provision in the first agreement whereby any one of the three persons could withdraw from the new corporation if he was at any time put at a financial disadvantage by the other two in reference to salary or income, and could sell his stock to the others at a price to be agreed upon or fixed by arbitration. The judge before whom the case was heard found that the defendant sold his stock in the new corporation and withdrew from it, but not under the provision above referred to, and that he has violated and intends to violate the sixth article of the last agreement. He found that all the allegations of the bill bearing upon the validity of the sixth article were proved. He also found as a fact, so far as he could properly so find, that the sixth article was reasonable and necessary for the carrying out of the transactions set forth in the agreement, and that the value of the stock of the Hawkes Electric Company was largely dependent upon its being kept. It is found that the business of the plaintiff is of a nature that may extend over the whole country. We are thus brought to a consideration of the law applicable to the case.

From very early times certain contracts in restraint of trade have been held void as against public policy. They are objec-

tionable on two grounds: they tend to deprive the party re-
strained of the means of earning a livelihood, and they deprive
the community of the benefit of his free and unrestricted efforts
in his chosen field of activity. The distinction was long ago
taken between contracts involving a partial restraint of trade
and contracts involving a general restraint of trade, the former
being held valid if not unreasonable, and the latter invalid.
The changes in the methods of doing business and the increased
freedom of communication which have come in recent years have
very materially modified the view to be taken of particular con-
tracts in reference to trade. The comparative ease with which
one engaged in business can turn his energies to a new occupa-
tion, if he contracts to give up his old one, makes the hardship
of such a contract much less for the individual than formerly,
and the commercial opportunities which open the markets of the
world to the merchants of every country leave little danger to
the community from an agreement of an individual to cease to
work in a particular field. The general principle that arrange-
ments in restraint of trade are not favored is, however, firmly
established in law, and now, as well as formerly, is given effect
whenever its application will not interfere with the right of
everybody to make reasonable contracts. Whenever one sells
a business with its good will, it is for his benefit, as well as for
the benefit of the purchaser, that he should be able to increase
the value of that which he sells by a contract not to set up a
new business in competition with the old. The right to make
reasonable contracts of this kind in connection with the sale of
the good will of a business is well established. But the par-
ticular provisions which are reasonably necessary for the protec-
tion of the good will of many kinds of business are very different
now from those required in the days of Queen Elizabeth. Then
the courts had occasion to inquire whether a limitation upon the
right to engage in the same business as that sold was unreason-
able because it included a town instead of a single parish, or ex-
tended a distance of ten miles instead of five. Now the House
of Lords in England has held by a unanimous decision in a re-
cent case that such a limitation which covered the whole world
was not unreasonable. Because in early times it seemed in-
conceivable that an agreement to refrain from establishing a

business of the same kind anywhere in the kingdom should be necessary to the protection of the good will of any existing business, it was laid down as an arbitrary rule that agreements so comprehensive in their terms were void.  Thus the distinction between a general restraint of trade and a partial restraint of trade grew up.  Contracts applying to any territory less than the whole kingdom were considered in reference to their reasonableness, having regard to the purpose for which the contract was made.  By the unanimous decision of the House of Lords in the case of *Nordenfelt* v. *Maxim Nordenfelt Guns & Ammunition Co.* [1894] App. Cas. 535, affirming the unanimous judgment of the Court of Appeals in [1893] 1 Ch. 630, it is now settled in England that a covenant unrestricted as to space, not to engage in a particular kind of business for twenty-five years, made in connection with the sale of the property of a manufacturing establishment, is valid, if, having regard to the nature of the business and the limited number of its customers, it is not wider than is necessary for the protection of the covenantee, nor injurious to the public interests of the country, as were found to be the facts in that case.  The earlier English authorities are reviewed at length in the opinions, and it is unnecessary to refer to them here.  Arbitrary rules which were originally well founded have thus been made to yield to changed conditions, and underlying principles are applied to existing methods of doing business.  The tendencies in most of the American courts are in the same direction.  *Oakdale Manuf. Co.* v. *Garst*, 18 R. I. 484.  *Fowle* v. *Park*, 131 U. S. 88, 97.  *Oregon Steam Navigation Co.* v. *Winsor*, 20 Wall. 64. *Tode* v. *Gross*, 127 N. Y. 480.  *Diamond Match Co.* v. *Roeber*, 106 N. Y. 473.  *Whitney* v. *Slayton*, 40 Maine, 224.  *Western Wooden Ware Association* v. *Starkey*, 84 Mich. 76.

In this Commonwealth the general doctrine of the cases seems to be that, in connection with the sale of the good will of a business, the vendor will be bound by any covenant which is reasonably necessary for the preservation and protection of the property which he sells.  *Pierce* v. *Fuller*, 8 Mass. 223.  *Perkins* v. *Lyman*, 9 Mass. 522.  *Stearns* v. *Barrett*, 1 Pick. 443.  *Palmer* v. *Stebbins*, 3 Pick. 188.  *Pierce* v. *Woodward*, 6 Pick. 206.  *Angier* v. *Webber*, 14 Allen, 211.  *Dean* v. *Emerson*, 102 Mass. 480.

*Morse Twist Drill & Machine Co.* v. *Morse,* 103 Mass. 73.   *Boutelle* v. *Smith,* 116 Mass. 111.   *Ropes* v. *Upton,* 125 Mass. 258. *Handforth* v. *Jackson,* 150 Mass. 149.   In cases in which such covenants have been held bad they were deemed to go further than was reasonable to give full value to the property sold.   In *Bishop* v. *Palmer,* 146 Mass. 469, relied on by the defendant, the covenant was unrestricted as to space, and was made in connection with the sale of the property and good will of a local business, not peculiar in its nature, for the protection of which so extensive a covenant was held to be unnecessary.   The case of *Gamewell Fire Alarm Telegraph Co.* v. *Crane,* 160 Mass. 50, is not inconsistent with the contention of the plaintiffs.   It is said in the opinion, that the " plaintiff did not buy the good will of a mercantile business, and the defendant Crane had no customers for fire alarm and police telegraph machines and apparatus."   A ground of the decision, stated by a majority of the court, is as follows: " The stipulation seems to us to be something more than is reasonably necessary to protect the plaintiff in the enjoyment of the property it bought, even if that should be adopted as the test, upon which we express no opinion."

Inasmuch as the stipulation in the present case is only to do no business for five years that shall interfere with or compete with the proposed business of the Anchor Electric Company, it seems quite clear under the authorities in Massachusetts that the stipulation goes no further than is reasonably necessary to protect the good will of the business sold by the defendant's corporation, and that it should therefore be held valid, unless a distinction is to be made between competition with the business of the Anchor Electric Company and competition with the business sold by the defendant and his company.   The business sold by the defendant was chiefly installing and constructing electric plants and appliances.   The business of the new corporation included with this that which formerly was done by the other two companies, namely, manufacturing and dealing in electrical appliances.

In considering this branch of the case, the nature of the contract of sale should be regarded.   The defendant's business was sold to be conducted as a part of a new and more general business.   Very likely the price paid for it was larger, and the good

will was deemed more valuable because it was to be so conducted. The plaintiff corporation carried on different but closely con-nected departments of the electrical business, and the different departments were so related to one another that sometimes it would be difficult, if not impossible, to distinguish between com-petition with one department and competition with another.

Moreover, this was a contract for mutual profit in conducting the new business, which, under the findings of the court, has all presumptions in its favor.   Each party was to devote himself to the interests of the new corporation.   Although the parties pro-vided for the establishment of a corporation, their arrangement was in the nature of a copartnership.   The profits of the new corporation were to be shared by the old corporations, which had sold their property and become stockholders in the new one.   It is difficult to see any good reason why the contract of the three persons to promote the interests of the new corporation should not be binding upon them.   This contract necessarily includes the agreement not to enter into competition against the new corporation.   The case seems to come within the language of Chief Justice Chapman in *Morse Twist Drill & Machine Co.* v. *Morse*, 103 Mass. 73, 75, where he says the " defendant did not technically become a partner with the plaintiffs, yet he became the associate of the other stockholders in the business, he him-self inducing them to join him in it, and having a large interest in the formation of the company; and the same principle that enables a partner to bind himself to do nothing in competition with the business of the firm ought to apply to him."

We are of opinion that the stipulation not to compete with the business of the plaintiff corporation is as binding on the de-fendant as if it were merely not to compete with such business as previously had been done by the Hawkes Electric Company.

*Decree for the plaintiffs.*