HARRISON v. GLUCOSE SUGAR REFINING CO.

(Circuit Court of Appeals, Seventh Circuit. May 6,. 1902.)

No. 830.

1. CONTRACTS—DEFENSES AGAINST SUIT TO ENFORCE—ILLEGALITY OF CORPORA-
TION.

The objection that a corporation is a trust or monopoly organized and existing in violation of law cannot be urged by one who has voluntarily entered into a contract with it, which is independent of, and has no relation to, its unlawful purposes, if such exist, for the purpose of avoiding such contract.

2. SAME—LEGALITY—COVENANTS IN RESTRAINT OF TRADE.

A covenant by an employé, in a contract by which he is employed for five years, that he will not during such term engage in, or become interested in, the specified business, in competition with his employer, at any place within a radius of 1,500 miles from the employer's principal place of business, is not against public policy and void as in restraint of trade and oppressive, where the business in which the employer is engaged is the manufacture and sale of products which it markets throughout the greater part of the territory to which the restriction applies, and especially where the manufacture involves secret processes, which, owing to the nature of his employment, must necessarily be communicated to the employé.

3. SAME—COVENANT BY EMPLOYE NOT TO ENGAGE IN COMPETING BUSINESS—
ENFORCEMENT BY INJUNCTION.

Complainant, a corporation engaged in manufacturing and selling glucose, grape sugar, starch, and kindred products of a glucose factory, employed defendant, who was skilled in the business, for the term of five years, at a salary of $4,000 per year. In the contract defendant covenanted that he would not engage in, or become interested in any way in, the same business, except under the contract, during the term, at any place within a radius of 1,500 miles from Chicago. Defendant was made superintendent of one of complainant's factories, where, by reason of his position, he was made acquainted with secret processes which were then in use, and being constantly devised, for utilizing at the smallest expense all the products and by-products of the manufacture. At the end of about three years he left the employment without cause, and engaged himself to another company, which was not then engaged in a rival business, but which soon thereafter constructed a glucose factory. Complainant protested, and offered to continue defendant in its service under the contract until the end of the term, but he refused to return. *Held*, that complainant was entitled to an injunction to restrain defendant from violating his covenant.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

On August 14, 1897, the appellant, Lee S. Harrison, entered into a written agreement with the appellee as follows:

"This agreement, made at Chicago, Illinois, on this 14th day of August, A. D. 1897, by and between Lee Harrison, of Peoria, the first party hereto, and the Glucose Sugar Refining Company, a corporation organized under the laws of the state of New Jersey, the second party hereto, witnesseth: Whereas, the first party has been for several years last past engaged in the business of manufacturing and selling glucose, grape sugar, starch, and kindred products of a glucose factory, and hereby represents that he has acquired exceptional skill and thorough knowledge of the said business; and whereas, the first party is desirous of entering the employ of the second party, which is engaged in the business of manufacturing and selling glucose,

¶ 2. See Contracts, vol. 11, Cent. Dig. §§ 555, 558.

grape sugar, starch, and kindred products and the various products of a glucose factory; Now, therefore, in consideration of the foregoing recitals and other good and valuable considerations, and the mutual covenants herein contained, it is hereby covenanted and agreed by and between the parties hereto as follows: (1) The second party hereby agrees to and does employ the first party, and the first party hereby agrees to and does accept such employment, for the term of five years from the 14th day of August, 1897, in such capacity, and for the performance of such services, in and about the said business of the second party, as the second party may from time to time require the first party to perform. (2) The first party shall, during the time of said employment hereby created, devote all his time and attention exclusively to the business and interests of the second party, and to the performance to the satisfaction of the second party of such duties as may be assigned to him in the premises by the second party, and he will do his utmost to further enhance and develop the best interests and welfare of the second party. (3) The first party hereby agrees and covenants with the second party that during said term of years he will not, directly or indirectly, enter the employment of or render any service of any kind to any individual, individuals, partnership, association, or corporation whatsoever (other than the second party); and during said term of years he will not, under any circumstances or conditions whatsoever (whether said employment be in force or not), engage in, or be or become interested, directly or indirectly, as an individual, partner, stockholder, director, officer, clerk, principal, agent, employé, trustee, lender of money, or in any other relation or capacity whatsoever, in or to, the business (other than that of second party) of buying, manufacturing, or selling glucose, grape sugar, starch, or any kindred products, or any of the products of a glucose factory, within a radius of fifteen hundred miles of the city of Chicago, Illinois. (4) In consideration of the continuous faithful performance of the covenant herein contained by the first party to be performed, and of the making of this contract, the second party hereby covenants and agrees that it will pay to the first party during said term of years the sum of three hundred thirty-three and one-third dollars per month, payable on the last day of each and every month.

"In witness whereof the parties hereto have duly signed and sealed this instrument the day, date, and place first above written.

"Lee S. Harrison.          [Seal.]

"The Glucose Sugar Refining Company,

"By O. H. Matthiessen, Pt."

At the date of the contract the appellee was, and is now, the owner of and operating factories in Chicago, Peoria, and Rockford, in the state of Illinois, and in Davenport and Marshalltown, in the state of Iowa, wherein are manufactured glucose, starch, grape sugar, and other kindred products. It sells its manufactured product throughout the United States and in various foreign countries and places, and particularly throughout a territory circumscribed by a radius of not less than 1,500 miles from the city of Chicago. It is claimed by the appellee that in the manufacture of these products it possesses many new and original processes which it was to its interest to keep secret; that it was essential to confide these secrets to Harrison, the appellant, because he was one of its superintendents, having charge of the factory at Davenport, in the state of Iowa; that he was taken through all the factories, and fully instructed with respect to the methods and processes used. The record discloses interesting facts touching the manufacture of these articles of commerce. The ordinary commercial starch, glucose, and grape sugar are produced from the starch granule in the corn kernel. At an early period in the history of the manufacture of these products, after the separation of the starch the remainder of the kernel went off from the factory in the nature of slops or offal, which was lost, except as it was fed to cattle in pens near the factory. Processes were devised whereby this slop or offal was treated so as to separate the hull, the gluten, and the germ. From the hull, bran is made; from the gluten, gluten meal; and the germ has proven a most interesting by-product. From it are made corn oil and oil cake and rubber used for belting and other similar purposes. The hull and gluten are dried, pressed, and shipped in large quantities to

New England and Europe as food for cattle. The corn oil has proven a valuable product, and is used in making soap and dressing leather, etc., and both the oil and oil cake are exported in large quantities to Europe. There are also manufactured from the starch seven or eight grades of glucose used by the syrup mixer, the jelly maker, the confectioner, and the brewer, each grade adapted for use in the special line of manufacture in which it is used. From the starch are made different grades of sugar, various grades of corn starch, and several grades of dextrine used in the finish of cotton goods and wall paper, and American gum, a product nearly identical in its chemical properties with gum arabic. There is also a process for the recovery of the steep water; that is, recovering all the slops from the water in which the corn is steeped in the process of separating the starch. These solids are used to enrich the feeds produced from the hull and gluten. It also appears that there are some 28 different grades of syrup, each involving a difference in ingredients, proportions, and temperature; the work requiring delicacy in planning and skill in treatment. The evidence shows that the art, by study and experiment, is still advancing. The superintendent and the chemist are constantly engaged in making experiments, that the greatest possible yield from the corn might be derived with the least expense. These processes are sought to be kept secret, that they may not come to the knowledge of competitors. The factories of the appellee are surrounded by high board fences to exclude the public. Watchmen are stationed at the several entrances, and no one is allowed to enter without a pass from the president or general manager. The laborers employed in the factories, except those employed in the laboratories, are required to stay in their respective departments. The processes adopted are communicated in confidence, and only to those having supervision, and there is constant intercourse between the superintendents of the different factories with respect to the experiments made. The appellant served in the capacity of superintendent of the factory at Davenport until June 8, 1900, when without cause he abandoned the service of the appellee and resigned his position. On the next day the appellee notified him that his contract had not expired, and instructed him to report at the general office for conference with the president, to which notice he paid no attention, but soon thereafter entered the service of the Illinois Sugar Refining Company as superintendent of its factory at Pekin, in the state of Illinois. The business of that company was originally the manufacture of sugar from beets, which business was not in competition with that of the appellee. But on the 15th of May, 1901, that company began the manufacture of glucose and kindred products from corn, with the appellant as its superintendent, and became an active competitor of the appellee in its line of business. On May 25, 1901, the appellee addressed a letter to the appellant protesting against his entering the employment of the Illinois Sugar Refining Company or otherwise engaging in business in violation of his contract, protesting against his using any information acquired by him while in the service of the appellee, and notifying him that the appellee was willing that he should re-enter its service under the terms and conditions of the agreement and during the period therein stated. The appellant, however, persisted in actively managing the business of manufacturing glucose and kindred products for the Illinois Sugar Refining Company, and on June 24, 1901, the appellee filed its bill in the court below, seeking to enjoin him from so doing until August 14, 1902, the date of the expiration of his contract term, as prayed in its bill.

The answer charges that the appellee is "an unlawful pool, combination, monopoly, or trust"; that the district circumscribed by a radius of not less than 1,500 miles from the city of Chicago comprises the entire territory in the United States within which glucose and its kindred products are or can be successfully manufactured and marketed; that the appellee corporation was organized by the combination, with two exceptions, of all the factories within what is known as the "Corn Belt," with a view of stifling competition, and creating a monopoly in the manufacture and sale of glucose and its kindred products throughout the United States, and to that end to unite and combine under one management so far as possible all the glucose plants and factories within the district circumscribed by a radius of 1,500 miles

from the city of Chicago, with the intention and for the purpose of regulating the production and output of glucose and its kindred products and the price thereof, and that, pursuant to such purpose, the appellee acquired the factories mentioned; that the corporation the appellee is an unlawful corporation, within the decision of the supreme court of the state of Illinois in Harding v. Glucose Co., 182 Ill. 551, 55 N. E. 577, 74 Am. St. Rep. 189. He charges that the contract was void, as being in restraint of trade and unreasonable; he denies the communication of any secrets of the business to him, and denies that he designs to use any information imparted to him by the appellee for any secret processes, methods, or devices used by the appellee in the manufacture of its products, and derived by and imparted to him in the course of his service with the complainant. He also submits that the appellee, the complainant below, has a full, complete, and adequate remedy at law for any damages sustained.

Upon the bill, answer, and replication and affidavits a motion for an injunction was heard by the circuit court, and on August 5, 1901, a decree of injunction was passed by the court as follows: "That until the further order of the court the said Lee S. Harrison, defendant, shall be, and he is hereby, restrained and enjoined from engaging in, being or becoming interested, directly or indirectly, as an individual, partner, stockholder, director, officer, clerk, principal, agent, employé, trustee, lender of money, or in any other relation or capacity whatsoever, in or about, the business (other than that of the complainant) of buying, manufacturing, or selling glucose, grape sugar, starch, or any kindred products, or any of the products of a glucose factory, within a radius of fifteen hundred (1,500) miles of the city of Chicago; and that until the further order of the court the said defendant, Lee S. Harrison, shall be, and he is hereby, restrained and enjoined from in any manner, directly or indirectly, working for, rendering any assistance or aid of any kind, name, or nature to, the Illinois Sugar Refining Company, in any capacity whatever, and from in any manner, directly or indirectly, imparting to the Illinois Sugar Refining Company, using for its benefit, or permitting it to use or avail itself of, in any way whatsoever, the skill, knowledge, or ability possessed by the defendant in the manufacture or sale of any of the products of a glucose factory, and from in any manner, directly or indirectly, being in any wise interested, either as an employé, principal, agent, stockholder, officer, director, or in any capacity whatsoever, in said Illinois Sugar Refining Company, or the business carried on by it, and from in any manner, directly or indirectly, disclosing to the Illinois Sugar Refining Company, or any of its officers, directors, agents, employés, servants, or attorney, any information, knowledge, trade secrets, methods, or processes of any kind, name, or nature relating to the manufacture or sale of glucose, grape sugar, starch, or any kindred products or any of the products of a glucose factory." From this decree or order an appeal is prosecuted.

Chester E. Cleveland and Thomas Cratty, for appellant.
William Z. Calhoun, for appellee.

Before JENKINS and GROSSCUP, Circuit Judges, and HUMPHREY, District Judge.

JENKINS, Circuit Judge (after stating the facts). The objection that the appellee is an illegal trust or monopoly condemned by the law of the state of Illinois, and so declared by the supreme court of that state, cannot be sustained. We have held in the case of an injurious combination of the nature here asserted that the remedy is by direct proceedings; that with respect to a contract which is independent of the illegal combination, and is merely incident to other and innocent purposes, one who voluntarily and knowingly deals with parties so combined cannot on the one hand take the benefit of his bargain, and on the other defend against the contract on the ground of the illegality

of the combination. Dennehy v. McNulta, 30 C. C. A. 422, 86 Fed. 825, 41 L. R. A. 609. See, also, Paper Co. v. Robertson (C. C.) 99 Fed. 985.

It is to be said also that since the submission of this case the supreme court of the United States in Connolly v. Sewer Pipe Co. (decided March 10, 1902, and as yet not officially reported) 22 Sup. Ct. 431, 46 L. Ed. 679, has declared the anti-trust law of the state of Illinois to be in derogation of the constitution and an invalid enactment.

It is urged that the contract in question is one in restraint of trade because of the covenant that during the stipulated time of service the appellant would not, directly or indirectly, become interested in the specified business within a radius of 1,500 miles from the city of Chicago otherwise than under his engagement with the appellee. The doctrine of restraint of trade had its birth in conditions anciently obtaining, and now greatly changed. Then the area of trade was confined within narrow territorial bounds. Intercommunication has become largely extended, and trades anciently limited to a small locality have become national in their extent. The rule is bottomed upon the consideration whether such a covenant was broader than the covenantee required for his protection. The restraint must not be arbitrary, but should be limited. It must be reasonable with respect to time and to the area within which the covenantee prosecutes his business. Beyond this, restraint is unnecessary and invalid. The test to be applied was asserted by Chief Justice Tyndall in Horner v. Graves, 7 Bing. 735, to be this:

"To consider whether the restraint is such only as to afford a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interests of the public. Whatever restraint is larger than the necessary protection of the party can be of no benefit to either. It can only be oppressive, and, if oppressive, it is, in the eye of the law, unreasonable and void, on the ground of public policy as being injurious to the interests of the public."

In Navigation Co. v. Winsor, 20 Wall. 64, 68, 22 L. Ed. 315, Mr. Justice Bradley, in delivering the opinion of the court, observes:

"There are two principal grounds on which the doctrine is founded that a contract in restraint of trade is void as against public policy,—one is the injury to the public by being deprived of the restricted party's industry; and the other is the injury to the party himself by being precluded from pursuing his occupation, and thus being prevented from supporting himself and his family."

In Gibbs v. Gas Co., 130 U. S. 396, 409, 9 Sup. Ct. 553, 557, 32 L. Ed. 979, Chief Justice Fuller, speaking for the court, says:

"The decision in Mitchel v. Reynolds, 1 P. Wms. 181, is the foundation of the rule in relation to the invalidity of contracts in restraint of trade; but, as it was made under a condition of things and a state of society different from those which now prevail, the rule laid down is not regarded as inflexible, and has been considerably modified. Public welfare is first considered, and if it be not involved, and the restraint upon one party is not greater than protection to the other party requires, the contract may be sustained. The question is whether, under the particular circumstances of the case and the nature of the particular contract involved in it, the contract is or is not unreasonable."

Notwithstanding some authorities which seem to have followed blindly the ancient rule, overlooking the reason of the rule and the changed conditions, it is not just to limit the territory within which restraint may be applied by any arbitrary geographical bounds, without regard to the nature and extent of the business in which the restraint is sought to be imposed. State lines cannot justly be applied within the reason of the rule. It is a question not of state policy, but of national policy and of general law. The reasonableness of the restraint has respect to the territory occupied by the business. That which would be reasonable in respect of one trade would be unreasonable in respect of another. Each case must be resolved upon its peculiar circumstances. Fowle v. Park, 131 U. S. 88, 9 Sup. Ct. 658, 33 L. Ed. 67; Carter v. Alling (C. C.) 43 Fed. 208; Rousillon v. Rousillon, 14 Ch. Div. 351; Nordenfelt v. Ammunition Co. [1894] App. Cas. 535; Underwood v. Barker, 68 Law J. Ch. 201; Kramer v. Old, 119 N. C. 1, 25 S. E. 813, 34 L. R. A. 389, 56 Am. St. Rep. 650; Cloth Co. v. Lorsont, L. R. 9 Eq. 345; Badische Anilin und Soda Fabrik v. Schott [1892] 3 Ch. 447; Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464; Herreshoff v. Boutineau, 17 R. I. 3, 19 Atl. 712, 8 L. R. A. 469, 33 Am. St. Rep. 850; Electric Co. v. Hawkes, 171 Mass. 101, 50 N. E. 509, 41 L. R. A. 189, 68 Am. St. Rep. 403.

In the contract in question the restraint is limited, as to time, to the period of service engaged for; as to territory, within a radius of 1,500 miles of the city of Chicago. It is contended that in the latter respect the restraint is unreasonable. The answer asserts that the territory described comprises the entire territory in the United States within which glucose and its kindred products are or can be successfully manufactured and marketed. The bill alleges that the market occupied by the appellee extends throughout the United States and to various foreign countries, but particularly extends throughout the territory described. Within the modern doctrine we cannot say that this restraint is invalid, the circumstances being considered. The appellant engaged his services to the appellee for a specified term. He was to aid in the manufacture of glucose and its kindred products. He was to receive a compensation of $4,000 per annum, and in addition, as he states, was to have for his five years' service $17,500 par value of the common stock of the appellee. The restriction that during the term of service the appellant should not become interested in the manufacture of like products in the territory occupied by the appellee seems not unreasonable. He engaged his whole service and his entire time for the period of five years and for a liberal compensation to be paid him. It is but common justice that during the period of service contracted, and from which service he had not been discharged, the appellant should not become interested in the manufacture or sale of the product of a rival in the business. In Rousillon v. Rousillon, supra, a contract not to engage in the sale of champagne, without limit as to territory, was enforced. In Whittaker v. Howe, 3 Beav. 383, a contract by a solicitor not to practice his profession in any part of the kingdom of Great Britain was held valid. In Underwood v. Barker, supra, an agreement by one in the service of a hay and straw merchant that he would not,

for the space of 12 months next after leaving the business, be interested in the same business in the United Kingdom of Great Britain, Ireland, the Province of Belgium, Holland, or the Dominion of Canada, nor for the period of five years in the Republic of France, was sustained. The extent of the restraint here is only that during the time engaged for he should not enter the service of a rival within the territory occupied by his employer. There is in this agreement, as we conceive, nothing contrary to public policy. If the public be deprived of his supposed skill it is only because he chose to break his contract, and declines to re-enter the service for which he engaged and which is still open to him. He is not debarred from engaging in other business or providing for his family in any other occupation. It is well said in Electric Co. v. Hawkes, supra:

"The comparative ease with which one engaged in business can turn his energies to a new occupation if he contracts to give up his old one makes the hardship of such a contract much less for the individual than formerly, and the commercial opportunities which open the markets of the world to the merchants of every country leave little danger to the community from an agreement of an individual to cease to work in a particular field."

We cannot believe that the scientific ability of the appellant will be lost to the public or that his family will suffer because he may not for the limited time of his contract expend his ability in the manufacture of glucose and its kindred products. He has but to re-enter the service to which he engaged and which is still open to him to place them above the fear of want. In one respect the case is peculiar, and distinguishable from most, if not all, of the cases bearing upon the subject. The instances in which the rule of restraint has been applied may be thus classified: (1) where the vendor of a business and its good will covenants that he will not re-enter the same line of business; (2) where the limitation is to take effect after the expiration of the contract period of service; (3) where the servant has been discharged; (4) where the master has acquiesced in the abandonment of the service of the servant. Here the restriction is limited to the period of service engaged for. The appellant left without cause and to enter the service of a rival. There was no acquiescence by the appellee. The appellant was immediately notified to return to the service which he had abandoned, and the bill alleges a willingness by the appellee to retain the appellant in its service and to pay him the compensation contracted for notwithstanding his conduct. Clearly, under such circumstances no public policy would be violated in upholding the covenant. He is not deprived of the opportunity to obtain the means of subsistence or of giving to the public the benefit of his skill in the business to which he has been accustomed. He has only to perform the duty which he engaged to perform to render himself and his family comfortable. We know of no public policy which requires us to sanction the bald violation of a contract lest the public should be deprived of the peculiar skill of the appellant because he will not exercise that skill where he has engaged to exercise it. We quite concur with the master of the rolls in Underwood v. Barker, supra, that:

"If there is one thing more than another which is essential to the trade and commerce of this country, it is the inviolability of contracts deliber-

ately entered into; and to allow a person of mature age, and not imposed upon, to enter into a contract, to obtain the benefit of it, and then to repudiate it and the obligation which he has undertaken, is prima facie, at all events, contrary to the interests of any and every country. * * * The public policy which allows a person to obtain employment on certain terms, understood and agreed to by him, and to repudiate his contract, conflicts with, and must, to avail the defendant, for some sufficient reason prevail over, the manifest public policy which, as a rule, holds him to his bargain."

There is, however, another consideration which, as we think, should prevail to hold this contract valid. The appellant was under his contract employed in a confidential capacity. in a business which, notwithstanding the denial of the appellant, we cannot but believe upon the evidence presented required many secret processes. The statement of facts which precedes this opinion details the measures of care adopted to prevent knowledge of those secrets by rivals and by the servants in the business, except those occupying confidential relations. The record is replete with evidence, not necessary here to be set forth at large, to the effect that the experts were constantly experimenting to discover processes by which every part of the product might be utilized at the minimum of expense, and that the experiments and the results obtained were communicated confidentially to the appellant. It also satisfactorily appears, notwithstanding his denial, that the appellant entered into the employment of a concern not at the time engaged in a rival business, and forthwith superintended for them the construction of works for the manufacture of glucose and its kindred products with a view to compete with the appellee in such manufacture. Under the circumstances it would require something more than his mere denial to convince us that in the manufacture of glucose he would not employ the secrets of the business of the appellee which had been confidentially communicated to him. He could not well do otherwise. He was employed by the rival for that purpose. He was to give all his skill, including the knowledge confidentially acquired in the business of appellee, to his new master. He could not in good faith serve the one without breach of duty to the other. In such case it may well be doubted if the rule with respect to restraint of trade should apply, because these secrets of the business are the property of the appellee, to which the public has no right, and may not justly insist that it shall receive the benefit of the appellant's services through breach of confidence. Machine Co. v. Morse, 103 Mass. 73, 4 Am. Rep. 513; Beal v. Chase, 31 Mich. 491. In all such cases courts have uniformly enjoined the delinquent party from engaging in the business from which he has agreed to refrain and from disclosing the secrets of the business which he has thus acquired. 1 Spell. Inj. § 477; 1 Story, Eq. Jur. 323; 2 Story, Eq. Jur. 952; 1 High, Inj. § 19; Hopk. Unfair Trade, § 67; Vickery v. Welch, 19 Pick. 523, 527; Peabody v. Norfolk, 98 Mass. 452, 458, 96 Am. Dec. 664; Chadwick v. Covell, 151 Mass. 190, 23 N. E. 1068, 6 L. R. A. 839, 21 Am. St. Rep. 442; Salomon v. Hertz, 40 N. J. Eq. 400, 2 Atl. 379; Westervelt v. Paper Co., 154 Ind. 673, 57 N. E. 552; Thum Co. v. Tloczynski, 114 Mich. 149, 72 N. W. 140, 38 L. R. A. 200, 68 Am. St. Rep. 469; Morison v. Moat, 21 L. J. Ch. (N. S.) 248; Yovatt v. Winyard, 1 Jac. & W. 394.

This is not a suit to enforce the specific performance of a contract for personal services, which it is conceded cannot be done. The injunction sought to restrain the appellant from violating his covenant and from disclosing the secrets acquired by him while in the service of the appellee under his contract of employment. There is no adequate remedy at law for such violation. There are no means to determine the extent of the damages which would be sustained by disclosure of such secrets. To vacate the restraint imposed by the court below would practically decree for the appellant upon the merits of the case, for a decree would be useless if the secrets were once disclosed.

We are of opinion that the decree awarding the injunction should be affirmed.