Richard L. Parish et al. (Complainants), Appellants, v. Morris Schwartz et al. (Defendants), Appellees.

**Gen. No. 33,393.**

Opinion filed May 20, 1929.

Robert F. Pettibone, for appellants; Deneen, Healy & Lee, of counsel.

Moses, Kennedy, Stein & Bachrach and Jones, Addington, Ames & Seibold, for appellees; Walter H. Moses and Thorley Von Holst, of counsel.

Mr. Presiding Justice O'Connor delivered the opinion of the court.

By this appeal the complainants seek to reverse a decree of the superior court of Cook county sustaining a demurrer to their amended bill and dismissing it for want of equity.

By their amended bill complainants sought to enjoin the defendants from violating a convenant contained in a written contract. Complainants purchased from the defendants certain shares of stock in the American Flange and Manufacturing Company, a corporation. The contract provided *inter alia* that in consideration of the moneys paid, the sellers agreed to turn over their shares of stock in the corporation and further agreed "that they will not, nor will either of them, engage directly or indirectly, either in person or as stockholders in, or employees of, any other corporation, or as members or employees of any partnership or association, or otherwise, for the period of sixteen years from the date of this agreement in the manufacture or sale of articles relating to bungs or plugs for bungholes, or air-vent openings, in containers; bushings in or at, and for use in or at, bungholes or air-vent openings, tags and sealing devices for bungholes, or air-vent openings and bungs therefor, and mechanisms of bungs and sealing devices, either in the United States of America east of the Mississippi River, or in any territory in which the American Flange & Manufacturing Company is now selling its products and will not employ or offer employment to, or cause others to offer employment to, any person now in the employ of said American Flange & Manufacturing Company." The bill further alleged facts which show that the defendants were violating the provision of the contract just quoted; and there are further allegations to the effect that the price paid by complainants to defendants for the stock was greatly in excess of the value of the stock unless the sale was accompanied by the restrictive covenant.

As we understand it, the court sustained the demurrer to the amended bill on the ground that the restrictive covenant was contrary to the public policy of the State of Illinois and therefore void. Counsel for the complainants contend that the covenant is valid and enforceable and in support thereof cite an article in 31 Harvard Law Review, 193, by Mr. Albert M. Kales; *Hall Mfg. Co. v. Western Steel & Iron Works,* 227 Fed. 588; *Diamond Match Co. v. Roeber,* 106 N. Y. 473; *Swigert v. Tilden,* 121 Iowa 650; *Anchor Electric Co. v. Hawkes,* 171 Mass. 101; *Cincinnati, Portsmouth, Big Sandy & Pomeroy Packet Co. v. Bay,* 200 U. S. 179, and other cases. · And they seek to distinguish the cases of *Lanzit v. Sefton Mfg. Co.,* 184 Ill. 326; *Union Strawboard Co. v. Bonfield,* 193 Ill. 420, chiefly relied upon by the defendants. The late lamented Albert M. Kales, in discussing the question now under consideration, in his article in the Harvard Law Review, said: ''Formerly it was urged against the restriction that the seller might become a charge upon the community because he could not carry on his trade or business. This was at once met by the requirement that the seller must have received a substantial consideration for the sale of his business. Recently the requirement has been held to be satisfied if some consideration of value in addition to or including the consideration necessary to make a contract is given. Today the fear of the seller becoming a charge upon the community has practically disappeared. If the business sold is small, the seller may take the consideration and start elsewhere. If the business is so large that the restriction probably covers a wide area, the consideration paid to the seller will usually keep him from becoming a public charge.

''Another ground formerly expressed for holding invalid these restrictive covenants was that they might leave a given community unserved by anyone capable of carrying on a given business. This may have been an important consideration in the case of a business

confined to a small territory at a time when others could not mobilize readily at a given point. It is out of place today, when the ease and freedom of transportation are such that if one man goes out of business in a given locality, there is little need to fear that the public will suffer by reason of the failure of anyone to serve it. Besides, when a business is sold by one to another, the public is substantially as well off as it was before.

". . . The rational test is the extent of the business sold and not the boundaries of some political subdivision of the country. This is the view of the more recent cases, where the restriction has been held valid even when the sale was to a competitor."

In the *Hall Mfg. Co.* case (227 Fed. 588), opinion by Judge Baker of the Circuit Court of Appeals, Seventh Circuit, it was held that the validity of a restrictive covenant in a contract in the sale of a business and good will was to be tested not by whether it was limited or unlimited as to time or place, but by determining whether on the facts of the particular case the restraint is greater than is reasonably necessary for the protection of the purchaser. And the Supreme Court of Iowa, in the *Swigert* case (121 Iowa 650), discussing the validity of restrictive covenants, said (p. 656): "It would therefore be absurd, in the light of this common experience, now to say that a man shuts himself up to idleness or expatriation, and thus injures the public, when he agrees, for a sufficient consideration, not to follow some one calling within the limits of some particular state. There is no expatriation in moving from one state to another, and from such removals a state would be likely to gain as much as it would lose." This quotation was from a Rhode Island case and which the Iowa court approved. The Iowa court then quotes from a New York case as follows: "The doctrine which avoids a contract for being one in restraint of trade is founded upon a public policy. It had its

origin at a time when the field of human enterprise was limited, and when each man's industrial activity was more or less necessary to the material well-being and welfare of his community and of the state. The conditions which made so rigid a doctrine reasonable no longer exist. In the present practically unlimited field of human enterprise there is no good reason for restricting the freedom to contract, or for fearing injury to the public from contracts which prevent a person from carrying on a particular business. . . ." And continuing: "To any one at all familiar with present-day conditions, it requires no argument to demonstrate that public policy requires that in trade matters there shall be no restraints imposed, save in those instances where it is clearly made to appear that the public welfare would be otherwise seriously endangered. And an all-important factor in business life is the right of individual contract—the right to buy and sell, to bargain and convey at will. . . . So, too, note has been taken of the baneful results which follow, seemingly with inevitable certainty, from giving sanction, even negatively, to acts or conduct involving fraud or dominated by bad faith. Certainly it is not going too far to say that there can be no sound public policy which operates to give countenance to the open disregard and violation of personal contracts entered into in good faith and upon good consideration. . . ." In *Underwood v. Barker,* 68 L. J. Ch. Div. 201, it is said: "If there is one thing more than another which is essential to the trade and commerce of this country, it is the inviolability of contracts deliberately entered into; and to allow a person of mature age, and not imposed upon, to enter into a contract, to obtain the benefit of it, and then to repudiate it and the obligations which he has undertaken, is, *prima facie* at all events, contrary to the interests of any and every country." The Supreme Court of Massachusetts, in the *Hawkes* case (171 Mass. 101), in discussing the question now

before us, after considering the law of England at the time of Queen Elizabeth, and then the subsequent change of the law, said (p. 105): "Now the House of Lords in England has held by a unanimous decision in a recent case that such a limitation which covered the whole world was not unreasonable. Because in early times it seemed inconceivable that an agreement to refrain from establishing a business of the same kind anywhere in the kingdom should be necessary to the protection of the good will of any existing business, it was laid down as an arbitrary rule that agreements so comprehensive in their terms were void. Thus the distinction between a general restraint of trade and a partial restraint of trade grew up. . . . It is now settled in England that a covenant unrestricted as to space, not to engage in a particular kind of business for twenty-five years, made in connection with the sale of the property of a manufacturing establishment, is valid, if, having regard to the nature of the business and the limited number of its customers, it is not wider than is necessary for the protection of the covenantee, nor injurious to the public interests of the country." And the New York Court of Appeals, in the *Diamond Match Co.* case, 106 N. Y. 473, said (p. 481) that: "The tendency of recent adjudications is marked in the direction of relaxing the rigor of the doctrine that all contracts in general restraint of trade are void." In the *Bay* case (200 U. S. 179), Mr. Justice Holmes, speaking for the Supreme Court of the United States, said: "The withdrawal of the vendors from opposition for five years is the ordinary incident of the sale of a business and good will. . . . The price is paid not for the vessels alone, but for the vessels with the covenant. . . . Presumably all that there was to sell beside certain instruments of competition was the competition itself. . . . It would accomplish no public purpose but simply would provide a loophole of escape

to persons inclined to elude performance of their undertakings, if the sale of a business and temporary withdrawal of the seller, necessary in order to give the sale effect, were to be declared illegal.''

In the instant case we have some difficulty in understanding just how the public would be injured by the failure of the defendants to engage in the business of making and vending bunghole devices in Illinois. The defendants deliberately sold their interests in the corporation to the complainants and as a part of the consideration solemnly agreed not to engage in the same line of business for a period of 16 years in the territory east of the Mississippi river, and after pocketing the money they turn around and violate their solemn agreement by engaging in the business contrary to their agreement. We think as did the Supreme Courts of Iowa and Rhode Island, as appears from the quotation from the *Swigert* case, *supra,* that even if the defendants would be compelled to move to another State, that Illinois ''would be likely to gain as much as it would lose.'' As said by Mr. Justice Holmes in the *Bay* case, by holding the covenant void we ''but simply would provide a loophole'' for the defendants to escape the performance of their undertaking.

But the law of Illinois, as we understand it, is that it is against the public policy of the State that a citizen shall not have the privilege of conducting his occupation at some place with its border.

In the *Lanzit* case (184 Ill. 326), a bill was filed to restrain the defendants from violating the terms of their written contract by which defendants had agreed that they would not engage in the business of manufacturing, selling, handling or dealing in paper receptacles, oyster pails, paper clothing boxes, folding paper boxes, or paper novelties of any kind or description for a period of ten years in the states of Illinois and

Indiana. The court held the restrictive covenant unenforceable and void. The court there said (p. 331):

"The question is here presented whether said contract between appellant and appellee is or not reasonable and consistent with the public policy of the State. The record shows that appellant was, at the time of the making of the contract, engaged in said business in this State, and that after his term of employment by appellee ended he became employed by the Rentz company, engaged in this State, in part in the same business. The effect of the contract, if enforced as decreed below, would be to deprive the public,—the people of the whole State,—of the industry and skill of appellant in the particular trade or business in which he may be most skillful and useful, and compel him to engage in some other business or move to another State in order to support himself and family,—in other words, to expatriate himself so far as his citizenship of this State extends and go beyond our jurisdiction. Whether or not, under certain facts and circumstances, a valid contract might not be entered into not to engage in a specified business within the State it is not necessary to here determine. As said above, 'cases must be judged by the circumstances.' But we are of the opinion that a contract of the character and tending to produce the effect of the one under consideration is, under all of the circumstances shown, unreasonable and against the public policy of this State." (Citing a number of authorities) and continuing the court said (p. 332): "The interest and welfare of the public are of paramount importance. If a contract is in restraint of trade throughout an entire State it may be void as against public policy, although it may appear not to be unreasonable when considered merely with reference to the extent of the business of the covenantee and the protection intended to be secured to him. If such were not the rule, then the mere magnitude of the business and trade involved in the contract would determine its

validity, overriding all questions affecting the public welfare." And the same was the holding in the *Union Strawboard Co.* case (193 Ill. 420), where it was held that a contract in restraint of trade may be good which embraces, within reasonable limits, parts of different States, but that a contract which applies to the whole State of Illinois is void and cannot be enforced. The court there said (p. 425–427): "The covenant sought to be enforced in this action is, that the defendant will not, for a term of twenty-five years, engage or be interested in the manufacture or sale of certain kinds of strawboard, boards and papers, or any other kind of boards or paper which will interfere with the sale and consumption of such boards and papers in the State of Illinois or elsewhere, when so doing may conflict with the business interests or diminish or lessen the profits of the Union Strawboard Company. . . . It is insisted, however, that the contract is divisible, and, the alleged violation being limited in the first and second counts to the State of Illinois, is valid and binding within the State. A contract in partial restraint of trade is valid provided it is founded upon a good consideration and only affords a reasonable protection to the interests of the party in whose favor it is imposed, and the prohibited area is reasonable, so as not to be injurious to the interests of the public and against public policy. . . . The restrictions imposed by this contract are probably no greater than necessary to prevent competition with the Union Strawboard Company in its business; but that is not the only test of its validity. If it should be conceded that the contract is divisible, the question then is, . . . whether it can be enfroced as to the entire State of Illinois. Counsel contend that it is valid to that extent, at least, and that the rule stated on that subject in the cases above cited should not be adhered to. (One of the cases above cited being the *Lanzit* case, *supra.*) The reason for the rule is, that it is against the policy

of the State that the people of the whole State should be deprived of the industry and skill of a party in an employment useful to the public, and he should be compelled either to engage in other business or abandon his citizenship of the State and remove elsewhere in order to support himself and family. . . . It is against the policy of the State that its citizens should not have the privilege of pursuing their lawful occupations at some place within its borders, . . . It is true that a contract may be valid which embraces portions of more than one State. Trade and business are not affected by State lines, and a contract might be good in restraint of trade which embraced, within reasonable limits, parts of different States, but an agreement which applies to the whole State is void and cannot be enforced."

Counsel for complainants contend that the holding in the *Lanzit* and *Union Strawboard Co.* cases is that a restrictive covenant such as the one involved in the instant case is held void only where the party sought to be enjoined from violating such covenant is prevented from engaging in an industry in which he is most skilful, and argue that, in the instant case, it appears that one of the defendants was skilful as a tool and dye maker and the other as a musician, in which occupations they had formerly been employed. There are some expressions in the opinions that might appear to sustain this contention but, upon a careful examination of them, we are of the opinion that the contention is untenable. Under the holdings of these two cases we are of opinion that the demurrer was properly sustained and the amended bill dismissed.

The decree of the superior court of Cook county is affirmed.

*Affirmed.*

McSurely and Matchett, JJ., concur.