## AMERICAN BRAKE BEAM CO. v. PUNGS.

(Circuit Court of Appeals, Seventh Circuit. January 20, 1905.)

### No. 1,092.

CONTRACTS—LEGALITY—RESTRAINT OF TRADE.

A contract recited that plaintiff, who was the patentee of an invention relating to brake beams, for the consideration of $10,000 to be paid him, had assigned to defendant, which was a corporation engaged in the manufacture of brake-beams, a certain patent and a pending application for a second and provided that plaintiff during the life of the patent should not become connected with any company manufacturing or selling brake-beams in the United States either as officer, employé or shareholder but reserved to him the right to terminate such part of the contract at any time by refunding the consideration paid him by defendant. *Held*, that such agreement to remain out of the brake-beam business did not render the contract unlawful as one in restraint of trade and competition or creating a monopoly and that plaintiff could maintain an action thereon to recover the stipulated consideration.

[Ed. Note.—For cases in point see vol. 11, Cent. Dig. Contracts, §§ 550–553.]

In Error to the Circuit Court of the United States for the Northern Division of the District of Illinois.

The action in the Circuit Court was on a written agreement between Pungs and the Brake Beam Company, wherein the Brake Beam Company, for certain considerations therein named, agreed to pay Pungs the sum of ten thousand dollars, credit being given for two thousand, five hundred dollars already paid.

The defense was the general issue, with notice of special defenses.

At the trial, on motion of the plaintiff, a verdict for the plaintiff for the sum of nine thousand, one hundred and thirty-five dollars, and forty-one cents was returned; and on this verdict, after motion for new trial was overruled, judgment was entered. Upon the refusal of the court to grant a new trial; upon the court's direction to the jury to return a verdict for the plaintiff; and upon the exclusion of certain evidence offered on the trial by defendant, the principal errors complained of are assigned.

The evidence showed, that beginning in 1886 as an inventor, and 1887 as a manufacturer, Pungs was in the metallic brake-beam business until 1892, when with others, he organized the American Brake Beam Company, which took over, along with other companies, his previous company. Of the American Brake Beam Company, Pungs was a stockholder and the manager until 1894, when selling his stock to Henry D. Laughlin, the latter became general manager of the company. Until 1897, however, Pungs remained in the employ of the company, superintending its business at Detroit, Michigan. On this latter date he was discharged.

January 19th, 1899, one of the contracts sued upon was executed in writing as follows:

An agreement between Wm. A. Pungs of the city of Detroit, in the state of Michigan, and the American Brake Beam Co., a corporation under the laws of the state of Illinois, whose chief or home office is in the city of Waukegan, in said state.

Witnesseth: In consideration of the mutual agreements of the parties, as herein expressed, they agree as follows:

1st: Under the date of June 28th, 1898, letters patent No. 606,298 were issued from the patent office of the United States to said Pungs, covering the brake beam therein described. His application for a patent on another brake beam has been allowed by the patent office, as per notice to him from Thomas S. Sprague & Son, dated Nov. 12th, 1898, and hereto attached. This latter patent, Pungs will cause to be issued to himself or the Brake Beam Co., as his assignee, as may be agreed.

2nd: Both these patents said Pungs sells to said Company, and he will assign them in due form, and also will assign to the Company all such letters patent as may be hereafter granted to him on any metallic brake beam or any part relating to a brake beam, and will enter into a written contract with the Company not to engage in a brake beam business in any way, shape or form, and not to be connected with any company manufacturing or selling brake beams, either as officer, employé or shareholder (the Chicago Railway Equipment Company alone excepted), all for the price and sum of Ten Thousand Dollars ($10,000.00) to be paid to him by said Brake Beam Company in four equal installments of $2,500.00 each, the first payable three months after the date hereof, the second in six months, the third in nine months, and the fourth in twelve months after said date; such stay-out contract to cover the period covered by said letters patent No. 606,298, and to be coextensive with the country. But he shall be given the right in said contract to at any time terminate it by refunding to said Brake Beam Company, its successors or assigns, said sum of Ten Thousand Dollars ($10,000.00).

3rd: In the event said Pungs at any time prior to the expiration of the term covered by said letters patent, that is to say, at any time prior to June 28th, 1915, becomes an officer, agent or shareholder in any company or corporation manufacturing or selling metallic brake beams of any type whatever, or engages in the business himself, that in that case his so doing shall be construed as an election on his part to refund to said Brake Beam Company the said sum of Ten Thousand Dollars ($10,000.00), forthwith, and he covenants and agrees so to do.

4th: This contract is in no way to affect the representative claims of the parties against each other and shall not be so treated, the deal covered by it being independent and alone.

March 22nd, 1899, a supplemental contract in writing was executed as follows:

An agreement between William A. Pungs of the city of Detroit, the state of Michigan, and the American Brake Beam Company, a corporation under the laws of the state of Illinois, whose chief office is in the city of Waukegan in said state.

Witnesseth:

In consideration of the mutual agreements of the parties as herein expressed, they agree as follows:

1st: Since the execution of the contract between the parties, dated January 19th, 1899, said Pungs has transferred to said Brake Beam Company letters patent of the United States No. 606,298 referred to in the 1st paragraph of said contract, and has also executed an assignment to said Brake Beam Company of his pending application for another patent on brake beams, which is also referred to in said 1st paragraph, and will without delay, cause the letters patent covering his said application to be forthwith issued to said Brake Beam Company, as assignee of himself, and to be duly delivered to the Company.

2nd: As contemplated in the said second paragraph of said contract of January 19, said Pungs now enters into this written contract with said Company, and by it covenants and agrees that he will not engage in the brake beam business in any way, shape or form at any place within the United States of America, its territories, or the District of Columbia and that he will not be connected with any company manufacturing or selling brake beams in the United States, either as officer, employé, or shareholder (the Chicago Railway Equipment Company alone excepted), at any time during the period covered by said letters patent No. 606,298. Said Pungs reserves the right, however, to at any time terminate this contract, and thus to relieve himself of his stay-out

obligation, by refunding to said Brake Beam Company, its successors or assigns, the sum of Ten Thousand Dollars ($10,000.00), which is the price to be paid him by said company for said letters patent, and his stay-out obligations, as hereinafter more clearly expressed.

3rd: For the letters patent as aforesaid and the stay-out obligation aforesaid, said Brake Beam Company covenants and agrees to pay to said Pungs the sum of Ten Thousand Dollars ($10,000.00) in four equal installments of twenty-five hundred dollars ($2,500.00) each, the first installment to be payable on the 19th day of April A. D. 1899; the second on the 19th day of July, the third on the 19th day of October, 1899, and the fourth and last on the 19th day of January, 1900.

4th: In the event said Pungs at any time prior to the expiration of the term covered by said letters patent, that is to say, at any time prior to June 28, 1915, becomes an officer, agent or shareholder in any company or corporation manufacturing or selling metallic brake beams of any type whatever, or engages in the business himself, then and in that case his so doing shall be construed as an election on his part to refund to said Brake Beam Company said sum of Ten Thousand Dollars ($10,000.00) forthwith, and he covenants and agrees so to do.

On these contracts, twenty-five hundred dollars, and no more, have been paid. The suit was for the balance. Further facts are stated in the opinion.

Harry P. Webber, for plaintiff in error.

Dwight C. Rexford, for defendant in error.

GROSSCUP, Circuit Judge, after stating the facts, delivered the opinion of the court.    The contract, upon which suit was brought, obligated the Brake Beam Company to pay an indivisible sum, ten thousand dollars.    The consideration was the conveyance to the Brake Beam Company of certain inventions patented and to be patented; as also an agreement, that during the period to be covered by certain of the letters patent, Pungs would not engage in the brake beam business in any place within the United States, or be connected with any company engaged in such business.    The contract does not disclose how much of the consideration was for the patents, or how much for the agreement to remain out of business.    On the face of the contract, either consideration, assuming that they were both lawful, would sustain the contract, and entitle Pungs to a recovery.

It is not argued that the consideration, so far as it is embodied in the inventions transferred, is not lawful.    Parties may lawfully assign inventions not yet patented, and even future inventions, so far as such future inventions are tributary to the inventions assigned.

But is was insisted that the agreement embodied in the contract to remain out of the brake beam business within the United States for the time named, was an attempt to illegally restrain trade, to illegally restrict competition, and to create a monopoly; and was, therefore, an unlawful consideration; and evidence was offered tending to show that though the assignment of the inventions was stated to be a part of the consideration, the sole real consideration, as understood between the parties at the time, was this agreement to remain out of the brake beam business.    This evidence was excluded.    Evidence, also, was offered tending to show that the inventions were without commercial or practical value.    But independently of its probative weight on the issue whether the agreement to remain out of business was, or was not, the sole real consideration, such evidence clearly would have been immaterial.

The first question thus presented, is this: Is the agreement to remain out a consideration that invalidates the contract? If the contract is not thus invalidated, the entire case made by plaintiff in error fails.

It will be noted that Pungs actually transferred the patents, so that the contract in this respect was already executed; also, that the period he was to remain out of the brake beam business was just the period the transferee was to have the benefit of the patent transferred; and, further, that Pungs was at liberty, at any time during the period named, to return to the brake beam business upon refunding the ten thousand dollars paid him.

We do not look on this as a contract in restraint of trade. It binds no one to stay out of the trade. At most, it is an agreement, merely, that if Pungs renews his connection with the trade, he shall return the consideration received by him for the patents transferred. Pungs, personally, was not a manufacturer of brake beams. He was in no true sense a dealer or competitor, commercially, in that business. His connection with the business was that of inventor chiefly; and the agreement under consideration may be considered as an incident, only, to the commercialization of his invention. Even in this he has put no mortgage on his inventive faculties. He has merely put himself where, without putting any binding restraint on his inventive faculties, or for that matter, upon his liberty as a manufacturer, he will realize, for the time being, on what he has already invented, the largest commercial return.

This is not, in our judgment, restraint of trade. The question whether a given contract is restraint of trade depends as much upon the nature of the business said to be restrained, as upon the more commonly mentioned elements of time and place. Harrison v. Glucose Refining Company, 116 Fed. 304, 53 C. C. A. 484, 58 L. R. A. 915. The nature of the contract under consideration comes plainly within the principles of that case, and of Morse, etc., Company v. Morse, 103 Mass. 73, 4 Am. Rep. 513, and other cases.

In the view thus taken of this question, the other questions raised and discussed become immaterial. The judgment of the Circuit Court is affirmed.