### SEPTEMBER TERM, 1896.

C. E. KRAMER, et al. v. JAMES Y. OLD, et al.

*Contract—Sale of Good Will—Restraint of Trade—Validity of Contract—Breach of Contract—Injunction.*

1. One who by his skill and industry builds up a business acquires a property in the good will of his patrons which is the product of his own efforts, and he has the power to sell his right of competition to the full extent of the field from which he derives his profit and for a reasonable length of time.

2. An agreement by vendors of property and business that they will not continue the business in the town in which the property is located will be upheld as restricting the vendors from engaging in such business in such place for the lives of each and every one of them, and is not invalid as being in restraint of trade for an unreasonable length of time.

3. Where the vendors of a property and business stipulate that they will not engage in the same business in the same place thereafter, neither of them has the liberty to take stock in or help to organize or manage a corporation formed to compete with the purchaser.

4. A single consideration of paying a specified sum of money by one party to a contract is sufficient to support several distinct stipulations by the other party to do or to refrain from doing certain things, and it is unnecessary to repeat in every paragraph of the contract that such stipulations are entered into for the consideration once expressed. Hence,

119—1

5. Where vendors sold their property and business, and stipulated with the purchaser that they would not thereafter engage in the same business at the same place, the latter stipulation was not without consideration because the property sold was worth all that was paid for it.

6. Where vendors of property and business who agreed not to conduct the same business in the same place thereafter joined with others in forming a corporation for such purpose, only such vendors, and not the corporation or other stockholders, will be enjoined from engaging in or taking stock in or assisting in the organization of such corporation.

ACTION by C. E. Kramer and others against James Y. Old, W. T. Old, W. N. Old and the Elizabeth City Manufacturing Company, to enjoin defendants from engaging in the milling business in Elizabeth City, pending in PASQUOTANK Superior Court, and heard before *Timberlake*, *J.*, *at Chambers*, at Currituck Court House, on 7th September, 1896, on motion to continue the restraining order theretofore granted.

His Honor found the following facts :

"1. That for a valuable consideration the plaintiffs and defendants Old entered into an agreement, as follows :

" 'Jas. Y. Old & Sons, consisting of Jas. Y. Old, W. T. Old and W. N. Old and Agenora Old, wife of Jas. Y. Old, of the first part ; and C. E. Kramer, John Kramer, Allen Kramer, Joseph Kramer and R. O. Preyor, of the second part, all the parties of Elizabeth City, in the said county, have this day entered into the following contract and agreement, viz. :

" ' 'A.' The parties of the first part have bargained, and they do hereby bargain and agree to and with the parties of the second part to sell and convey to them on or before the first day of September, 1891, by good and sufficient deed and conveyance in fee-simple, at the price of seven

KRAMER *v.* OLE.

thousand dollars, the following described real and personal property, situated in the county aforesaid, near Elizabeth City, to-wit:

" 1st. That certain lot or tract of land in said county which the said James Y. Old purchased by deed in fee on the 24th day of March, 1890, from J. B. Fearing and W. B. Fearing and their wives, as will appear by reference to Book Number Ten, page 379, in the office of the Register of Deeds in the said county, the same bounded and described as follows:

" Near the boundaries of Elizabeth City, beginning on the north side of the street leading from Dry Point to Deep Branch and on the east side of Butler's Lane, thence eastwardly along the said street 340 feet to a corner pine tree, thence northwardly parallel with Butler's Lane to the river, thence along the river westerly to Butler's Lane, thence southwardly along Butler's Lane to place of beginning—containing one acre more or less.

" 2nd. The mill building and office and all other buildings and improvements situated on the said lot and belonging thereto.

" 3rd. All the following property contained in said buildings, and in the said lot, and on the lot leased from Mr. Fearing on the opposite side of the street, to-wit:

" Engine and boiler, saw-mill, edger and cut-off, all the line shafting, counter shafting, pulleys and belting, O. K. saw gummer, log jacker and chain for same, four sets of truck wheels and frames, three cant hooks, three steel pinch bars, vice, two monkey·wrenches, pair chain tongs, two augers, two chisels, two cold chisels, hand saw, crosscut saw, two hammers, two axes, lot of turn tables and racks for lumber; also two writing desks, watchman's clock, stove, looking glass, three chairs, wash stand, pitcher, bowl, coal bucket and shovel, two spittoons, all

the machine oil that may be on hand on September 1, 1891, three shovels, new lighter, floating battery, two lamps and two lanterns, iron square, level and log rule, brace and bit, stilson wrench, tin cant hook, and for the consideration aforesaid, to-wit :

" The conveyance in fee as aforesaid, the parties of the second part agree to pay the said sum of seven thousand dollars in cash on the said 1st day of September, 1891, or earlier at their option, for the property above mentioned, upon the execution and delivery to them by the parties of the first part of a good and sufficient deed and conveyance in fee.

" And as an earnest of good faith for the performance of their said agreements, the parties of the second part have this day deposited and paid over to the parties of the first part one hundred dollars in cash and their joint and several promissory notes, payable on the first day of September, 1891, at the Banking House of Guirkin & Co., in the sum of Four Hundred Dollars.

" And it is hereby mutually agreed by the first and second parties to this contract that if the parties of the second part shall well and truly comply with their agreement as aforesaid, to pay in cash to the parties of the first part on the first day of September, 1891, the sum of seven thousand dollars for the property described, the said deposit of cash and note, aggregating the sum of five hundred dollars, shall be counted and taken as part payment of the said seven thousand dollars, but if they shall fail to comply with their part of this contract the said cash and note, amounting to five hundred dollars, shall be forfeited to the parties of the first part.

" It is agreed by the parties of the first part that if the property above enumerated shall be damaged or destroyed by fire or other accident before the first day of September,

*in toto* or in any material degree, so that the property shall be rendered useless for the purpose for which it is intended, this contract shall be null and void and of no effect, unless the parties of the first part shall put it in as good repair and condition as it is now in, in reasonable time after the accident and at their own expense, and that proper deduction shall be made for any partial or minor damages to the property if not repaired by the parties of the first part aforesaid.

" And as a further consideration the said Jas. Y. Old, W. T. Old and W. N. Old hereby agree that they will not continue the business of milling in or in the vicinity of Elizabeth City after the first day of September, 1891, and the full completion of this agreement.

" There is existing upon and against the property above described a deed of trust in favor of J. C. Meekins, Sr., to secure several notes therein named, aggregating the sum of two thousand six hundred and forty-five dollars or thereabout, and no other lien of any kind against the property. It is mutually agreed that the parties of the second part are to assume and pay the said debt of Meekins, and that the amount shall be taken as a part of the said consideration of seven thousand dollars.

" ' *In Witness Whereof*, The parties of the first part and second part have hereunto set their hands and seals, July 7th, 1891.

Jas. Y. Old,
W. T. Old,
W. N. Old,
Agenora Old,
C. E. Kramer,
A. K. Kramer,
J. P. Kramer,
Robt. O. Preyor,
John A. Kramer,
Per W. J. Griffin, Atty.'

. " 2. That the defendants Old, after the execution of said contract and in pursuance of same, discontinued the milling business in Elizabeth City, N. C., and thereafter went into said business at Yeopim, in Perquimans County, and were there engaged in this business until the organization of defendant corporation in this cause.

" 3. The defendants Old sought to get plaintiffs to release them from so much of the contract marked ' A ' as prohibited them from engaging in the milling business at Elizabeth City, and allow them to remove their milling plant from Yeopim to Elizabeth City, which request was declined, as appears in the letter filed in the affidavit of C. E. Kramer directed to J. Y. Old, and signed by Kramer Bros. & Co., per C.

" 4. That after said refusal the defendant corporation was organized by defendants Old to conduct a milling business in the town of Elizabeth City, and said defendants Old placed their mill plant, located at Yeopim, as aforesaid, in said corporation, and also a site for the plant in Elizabeth City, in order to carry on the said business in said town of Elizabeth City, and that the defendants Old own a controlling interest in said corporation and are superintending it and controlling the same.

" 5. That W. T. Old is president, J. Y. Old vice-president and manager, and last of defendants Old a director in said corporation, and that they have been the active parties in clearing up the site, erecting buildings and moving their mill from Yeopim to Elizabeth City, and that the other stockholders are inexperienced in mill business and intimate friends of the said defendants Old, all of whom had knowledge of the contract marked ' A ' before they put any money in said corporation.

" 6. That said defendant corporation was formed for the

purpose of evading so much of said contract as prohibited the defendants Old from engaging in the milling business in Elizabeth City.

" 7. That plaintiffs are engaged, and have been for the past six years, in milling business at Elizabeth City, and the mill now being erected by defendants is in the corporate limits of said town.

" 8. That no stock has been issued in the defendant corporation and only one assessment made.

" 9. That the evidence tends to show that defendants are insolvent.

" 10. That it would work irreparable damage to the plaintiffs to allow defendants to build their mill and operate same as they are now attempting to do."

His Honor continued the restraining order until the hearing, and the defendants appealed.

*Mr. W. J. Griffin*, for defendants (appellants).
*Mr. E. F. Aydlett*, for plaintiffs.

AVERY, J. : The Courts in later years have disregarded the old rules by which it was sometimes attempted arbitrarily to fix by measurement the geographical area over which a contract in partial restraint of trade might be made to extend, and to prescribe a limit of time beyond which it could not be made to operate.

The modern doctrine is founded upon the basic principles that one who, by his skill and industry, builds up a business, acquires a property at least in the good will of his patrons, which is the product of his own efforts (*Cowan v. Fairbrother*, 118 N. C., 406), and has the fundamental right to dispose of the fruits of his own labor, subject only to such restrictions as are imposed for the protection of society either by express enactments of law or by public

KRAMER *v.* OLD.

policy. *Hughes* v. *Hodges,* 102 N. C., 239; *Bruce* v.
*Strickland,* 81 N. C., 267. But the property which one
thus creates by skill, or talent and industry, is not market-
able, unless the owner is at liberty to sell his right of com-
petition to the full extent of the field from which he
derives his profit, and for a reasonable length of time.
*Cowan* v. *Fairbrother, supra ;* 2 High on Inj., Sec. 1174 ;
*Cloth Co.* v. *Lorsant,* 39 L. J. N. S. Eq., 86 ; *Rousilon* v.
*Rousilon,* 14 Ch. D., 351 ; Clark on Contracts, p. 451. To
the extent that the assignor of this species of property is
left at liberty to come into competition with the assignee the
market value of what is sold must fall below that of the
untrammeled right to freedom from competition in the
whole field from which the former derived the support of
his business. The test of the reasonableness of the terri-
torial limit covered by such contracts is involved in the
question whether the area described in the contract is
greater than it is necessary to make it in order to protect
the purchaser from competition in his efforts to hold and
get the full benefit of the business or right of competition
bought by him. The three defendants, who sold to the plaint-
iff, retained the undisputed right to continue in the same
business and operate at any point beyond Elizabeth City
and the vicinity, and exercised it by operating their mills.

But in our case it was not contended that the area of
territory covered by the restrictive agreement was so
unreasonably great as to vitiate the contract, but that the
time for which the defendants covenanted to refrain from
entering into the same business imposed an unnecessary
restriction upon the rights of the three defendants, and
was therefore contrary to public policy and void. It must
be conceded that in so far as it is consistent with the power
to sell the property which is the creation of one's own
labor, physical or mental, society has the right to claim

an open field for every man's labor, skill and competition
with others, both for the benefit of his family and the
more direct benefits accruing to society from removing
restrictions and encouraging competition in every kind of
trade.    The reason of the law leads to the adoption of any
rule that is calculated to reconcile all conflicts between
the proper exercise of the *jus disponendi* of the individual
and the interests of society at large.    The services of no
one person are so valuable to the public, in any field to
which his business may extend, as to demand that he shall
receive a smaller price for his right of competition, because
an arbitrary rule forbids him to extend the restriction in
point of time to the term of his own life, or that of the
purchaser, or for their joint lives.    The enlargement of
the restrictive area by later adjudications is founded, there-
fore, upon a principle which it was reasonable to apply in
determining what is the lawful limit of time.    Where the
contract is between individuals or between private cor-
porations, which do not belong to the *quasi* public class,
there is no reason why the general rule that the seller
should not be allowed to fix the time for the operation of
the restriction so as to command the highest market price
for the property he disposes of should apply.    *Diamond
Match Co.* v. *Roeber*, 106 N. Y., 473 ; *Morgan* v. *Perhamus*,
36 Ohio St., 517 ; *Morse, &c., Co.* v. *Morse*, 103 Mass., 73.

The stipulation on the part of James Y. Old, W. P. Old
and W. N. Old, to quote the exact language of the contract,
is, " that they will not continue business of milling in the
vicinity of Elizabeth City after the first day of September,
1891, and the full completion of this agreement. "    The
contract having been in other respects performed, the
agreement is now complete in the sense contemplated by
the parties.    The three defendants were at most restricted
from engaging in the business for the lives of each and

KRAMER v. OLD.

every one of them. Such a sale has been upheld upon reason and authority in other courts. The plaintiff bought their right to compete in their own persons in the business to which he succeeded as purchaser. It was not unreasonable that he should insist upon the stipulation that none of the three should interfere while they lived, by competition at the particular place mentioned, either with him as purchaser, or his assignee in law or in fact. In the case of *Morgan* v. *Perhamus, supra,* the facts were that a milliner sold her stock and good will, and engaged " not to carry on the business *at any time in future* at the town of F, or within such distance of said town as would interfere with said business, whether carried on by said L. S. and P. or their successors." The agreement was held to be binding by the Supreme Court, and the seller was enjoined from resuming business. There, as in our case, the time was not described, except as an inhibition on a particular person, with the implication that it should extend to her life. The law would have construed the contract as conferring the right to sell or transmit to a personal representative as a part of the assets of his estate the property bought, whenever the time was found to be co-extensive with the lives of the three defendants. *Cowan* v. *Fairbrother, supra;* Clark on Contracts, p. 454, 455, and note, p. 456 ; 2 High on Inj., Sec. 1345; *Lewis* v. *Langdon,* 7 Sim., 422; *Bininger* v. *Clark,* 60 Barb., 113. In McClary's Appeal, 58 Penn. St., 51, the agreement, which was held not to be unreasonable, was that a physician who had sold his business and good will to another physician should " never thereafter establish himself as a physician within twelve miles (of his original place of business) without the consent of the purchaser." The contract there, like that under consideration, could be fairly construed in no other way than as operating for the term of the seller's life. These cases and

others are cited with approval by text writers, and seem as a rule to have established the reasonable doctrine contended for by the plaintiff in the States as well as in England. 2 High, *supra*, Sec. 1180; 1 Beach on Inj., Sec. 462 to 470; *Whitaker* v. *Howe*, 3 Bear, 383.

It is elementary learning that the single consideration of paying a specified sum of money by one party to a contract is sufficient to support several distinct stipulations by the other party to do or refrain from doing certain things, and it is unnecessary to repeat in every paragraph of the contract that such stipulations are entered into for the consideration once expressed. It is sufficient to set forth that A has paid or agreed to pay a certain sum, and that B has agreed to do or abstain from doing certain things which may be stated *seriatim* in separate paragraphs. A case almost exactly in point, because it relates to a somewhat similar agreement, is that of *Morse, &c., Co.* v. *Morse, supra.*

Though the contract is valid and binding as between the parties, it in no way impairs the right of the defendants, who were not parties, to engage in any kind of business in Elizabeth City. But, as a Court of Chancery, we must declare that, where injunctive relief is asked, it is the duty of the Court to restrain the contracting parties from violating the spirit as well as the letter of the agreement. Under a fair and just interpretation of its terms, the stipulation meant that the three defendants would not engage in business so as to bring their skill, names and influence to the aid of any competitor carrying on the same trade within the prohibited limits. It was therefore a violation of the contract on the part of the three mentioned, or either of them, to take stock in, help to

KRAMER *v.* OLD.

organize or manage a corporation formed to compete with the plaintiff in his business. *Jones* v. *Hearns*, 4 Ch. Div., 636.

While the Courts will not restrain a party bound by such a contract from selling or leasing his premises to others to engage in the business which he has agreed to abstain from carrying on, or from selling to them the machinery or supplies needed in embarking in it (*Reeves* v. *Sprague*, 114 N. C., 647), a different rule must prevail when it appears that the prohibited party attempts, not to sell outright to others, but to furnish the machinery or capital, or a portion of either, in lieu of stock, in a corporation organized with a view to competition with the person protected by his contract against such injury. The three contracting defendants have presumably received the full value of the business sold, and which is protected by their own agreement against their own competition, and equity will not allow them, with the price in their pockets, to evade their contract under the thin guise of becoming the chief stockholders in a company organized to do what they cannot lawfully do as individuals.

The judgment must be modified so as to restrain only the three defendants who were parties to the original contract from engaging in or from taking stock in or assisting in the organization of a corporation formed with the purpose of carrying on the business of milling in or in the vicinity of Elizabeth City. The order must be vacated as to the other defendants.

Modified and Affirmed.