BICYCLE TRANSIT AUTHORITY, INC. v. DR. RITCHIE BELL, INDIVIDUALLY AND TRADING AS ABIES RENTALS, WALTER TRIPLETTE AND LIVINGSTON LEWIS

No. 8415SC198

(Filed 5 February 1985)

Contracts § 7— bike shop—covenant not to compete—meaning of "be under contract with" and "be associated with"—summary judgment improper

The trial court erred in entering summary judgment for defendant on plaintiff's claim that defendant violated a covenant not to compete where the contract between the parties provided that defendant would not "be under contract with" or "be associated with" any business which was a competitor of plaintiff within a two county area, but the evidence showed that defendant did in fact lease the other half of the building in which plaintiff operated his business to a competitor of plaintiff, deferred collection of the first two months

rent for one year, and gave the competitor the option to purchase the entire building, exercisable during the term of plaintiff's lease.

Judge ARNOLD dissenting.

APPEAL by plaintiff from *McLelland, Judge.* Judgment entered 27 December 1983 in ORANGE County Superior Court. Heard in the Court of Appeals 13 November 1984.

This is a civil action wherein plaintiff alleged that defendant Bell violated the terms of a Non-Competition and Consulting Agreement (hereinafter "agreement") and engaged in unfair and deceptive trade practices affecting commerce. Bell answered denying the allegations, and counterclaimed for money due under the agreement. Plaintiff replied denying liability under the agreement and contended that Bell's breach of the agreement relieved it of any further obligation to pay under the agreement. Subsequently, plaintiff amended its complaint to add defendants Triplette and Lewis.

The action arose out of the following transactions. On 1 August 1980, plaintiff and defendants, in their capacities as shareholders of Carolina Bikeways, Inc., entered into a contract whereby plaintiff purchased from defendants a bicycle sales and service business, known as "The Clean Machine," located at 110 West Main Street, Carrboro, North Carolina, and a similar business in Durham, North Carolina. The contract provided that the seller was to procure a lease for The Clean Machine to remain at its present location for seven years. In conjunction with the execution of the contract, plaintiff and defendant Bell, individually, entered into a lease agreement, leasing the premises located at 110 West Main Street, Carrboro, North Carolina to plaintiff for seven years.

On 1 August 1980, plaintiff and each of the defendants executed the non-competition agreement which in pertinent part provided:

[Defendants] hereby agree that for a period of seven (7) years from July 30, 1980, they will not jointly or severally (unless they have obtained . . . [plaintiff's] prior written consent) directly or indirectly be employed by, be associated with, be under contract with, own, manage, operate, join, control or participate in the ownership, management, operation, or con-

trol of, or be connected in any manner with, any business which is a competitor of . . . [plaintiff] in Durham County or Orange County, North Carolina. . . . In consideration for such covenant, . . . [plaintiff] agrees to pay to . . . [defendants] (to be divided among . . . [defendants] as they themselves shall decide and determine) the sum of $30,000. The $30,000 shall accrue interest at the rate of 10% per annum for the period of two years from August 4, 1980, thereby making the unpaid principal and accrued interest the sum of $36,000 at the end of the second full year. This sum of $36,000 shall be paid in a lump sum to . . . [defendants] on August 3, 1987. However, at the end of the two year period referred to above, the $36,000 principal and accrued interest thereon shall continue to accrue interest at the rate of 10% per annum, which interest shall be paid in equal quarterly installments in the amount of Nine Hundred Dollars ($900.00) each until the above-styled $36,000 sum becomes due and payable on August 3, 1987.

On 6 October 1982, Bell and Alan Garrett Snook entered into a lease agreement whereby Bell leased to Snook the premises located next door to plaintiff's business. The lease stated that the "premises shall be used by the Lessee to operate a mail order and walk-in bicycle business . . . ." Other provisions of the lease provided that Bell would defer collection of the first two months rental for one year, and would give Snook an option to purchase the entire building. Snook, by oral agreement, sublet the property to Performance Bicycle Shop, Inc., a corporation in which he was the majority stockholder. The company's business consists of selling bicycle parts, components, accessories and clothing to walk-in and direct mail customers. Many of these items are identical to items sold by plaintiff.

Based upon the facts stated above, all the parties moved for summary judgment stipulating that the sole issue to be decided was whether Bell's conduct constituted a violation of the non-competition clause in the parties' agreement. On 27 December 1983, the trial court entered an order denying plaintiff's motion for summary judgment and allowing defendants' motion for summary judgment. From this judgment, plaintiff appealed.

*Casey, Haythe & Krugman, by Samuel T. Wyrick, III and Emily R. Copeland, for plaintiff.*

*Sessoms & Marin, P.A., by Stuart M. Sessoms, Jr., for defendants.*

WELLS, Judge.

Summary judgment is appropriate when there is no genuine issue of material fact. N.C. Gen. Stat. § 1A-1, Rule 56(c) of the Rules of Civil Procedure (1983). When a contract is in writing and free from ambiguity, such that no disputed facts exist, the intention of the parties becomes a question of law for the court. *Lane v. Scarborough,* 284 N.C. 407, 200 S.E. 2d 622 (1973). If the writing leaves it uncertain as to the true agreement, however, what was meant by the parties may be made certain by parol evidence and the question is for the finder of fact. *Cleland v. Children's Home,* 64 N.C. App. 153, 306 S.E. 2d 587 (1983). The fact that both parties have moved for summary judgment does not necessarily mean that summary judgment should be granted. *See Id.; Steinberg v. Adams,* 90 F. Supp. 604 (S.D.N.Y. 1950) (under similar federal rule). "Whether or not a genuine issue of material fact exists is a determination for the court, not the parties, and the fact that the parties may have thought there was no material fact in issue is in no way controlling." *Cram v. Sun Insurance Office, Ltd.,* 375 F. 2d 670 (4th Cir. 1967); *see also Soley v. Star & Herald Co.,* 390 F. 2d 364 (5th Cir. 1968) (error to overlook factual issue). We believe there was a factual issue as to whether Bell's entering into the lease with Snook constituted direct or indirect contract with, or association with, competition in violation of the contract. Summary judgment was therefore improperly granted.

The prerequisites for validity and enforceability of covenants not to compete have been discussed at length elsewhere and need not be repeated here. *See A.E.P. Industries v. McClure,* 308 N.C. 393, 302 S.E. 2d 754 (1983); *Jewel Box Stores v. Morrow,* 272 N.C. 659, 158 S.E. 2d 840 (1968). Under North Carolina law, the reasonableness of such covenants is a matter of law for the court to decide. *Id.* The court here did not rule that the covenant was unreasonable (nor do defendants so contend), only that Bell did not violate it in leasing to Snook. Since the reasonableness of the covenant depends on the circumstances of the case, *Id.,* which

have not been fully developed, we will confine our examination to the question decided, whether Bell's conduct constituted a breach of that covenant. This requires interpretation of the contractual language "be associated with" or "be under contract with."

Defendants argue that covenants not to compete are not favored and that the contractual language should therefore be strictly construed against plaintiff. Our review of the modern cases indicates that North Carolina has shown increasing willingness, in light of modern business conditions, to recognize and enforce such covenants. *A.E.P. Industries v. McClure, supra; Enterprises, Inc. v. Heim,* 276 N.C. 475, 173 S.E. 2d 316 (1970). Rather than apply rules of strict construction, our supreme court has given such covenants "reasonable and fair" construction. *Jewel Box Stores v. Morrow, supra.* We are aware of one recent North Carolina case using a rule of strict construction, but that resulted from application of Georgia law as *lex loci contractus. Wallace Butts Ins. Agency v. Runge,* 68 N.C. App. 196, 314 S.E. 2d 293 (1984). Giving the cited contractual language a reasonable and fair construction, we conclude there was at least a jury question whether Bell's conduct fell within the contractual anti-competitive provisions.

First of all, it is well established that a lease is a contract, or at least an "association." Bell's lease agreement with Snook specifically recognized that Snook would operate a bicycle business in the other half of the building. Bell gave Snook a substantial business concession by allowing him to postpone payment of rent. The record does not reflect what constitutes typical commercial rents in Carrboro; the evidence at trial may well show that Snook received preferential treatment here as well. Moreover, the lease contained an option provision, *exercisable during plaintiff's occupancy,* allowing Snook to purchase the entire building. Taking this evidence in the light most favorable to plaintiff, we conclude that summary judgment for Bell on this issue was incorrectly granted. Since the claims of the other defendants arise under the same contract and are identical with Bell's, and since it is well established that breach by Bell of his promise would justify non-performance by plaintiff, summary judgment in their favor was also incorrect.

*Kramer v. Old,* 119 N.C. 1, 25 S.E. 813 (1896), does not require a different result. There the plaintiff purchased a milling

business and the three defendant sellers contracted not to "continue business of milling." The supreme court held that this language forbade defendants from taking stock in, organizing or managing a rival mill. The court continued:

> · While the courts will not restrain a party bound by such a contract from selling or leasing his premises to others to engage in the business which he has agreed to abstain from carrying on, or from selling to them the machinery or supplies needed in embarking in it (*Reeves v. Sprague*, 114 N.C. 647), a different rule must prevail when it appears that the prohibited party attempts, not to sell outright to others, but to furnish the machinery or capital, or a portion of either, in lieu of stock, in a corporation organized with a view to competition with the person protected by his contract against such injury. The three contracting defendants have presumably received the full value of the business sold, and which is protected by their own agreement against their own competition, and equity will not allow them, with the price in their pockets, to evade their contract under the thin guise of becoming the chief stockholders in a company organized to do what they can not lawfully do as individuals.

*Id.* The contract in *Kramer*, as in the *Reeves* case cited, precluded *engaging* in the same *business*: the contract here is not "such a contract," *Kramer v. Old, supra*, but precludes a broader range of activities. As suggested above in *Kramer*, a court of equity will in any event look behind the mere form of subsequent dealings by the seller to enforce the spirit of the agreement. *See also Reeves v. Sprague, supra* (court considered enjoining non-party, but insufficient proof). The record here contains a sufficient forecast of evidence to show genuine issues of material fact.

For the foregoing reasons, summary judgment was improperly granted. The order is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

Judge BECTON concurs.

Judge ARNOLD dissents.

Judge ARNOLD dissenting.

I respectfully dissent from the majority's decision for the following reasons. The majority states that Bell's conduct raises, at least, a jury question regarding whether his conduct violated the agreement's anti-competition provision. However, as the majority points out in their statement of the facts, the parties stipulated, at the hearing on the motions for summary judgment, that the only issue to be decided was whether Bell's leasing of property to plaintiff's competitor violated the terms of the agreement. This is a question of law, not a question of fact, and, therefore, I believe that the majority improperly concluded that a genuine issue of material fact existed for a jury to decide.

Furthermore, I believe the trial judge properly concluded that Bell's conduct did not violate the anti-competition agreement. Covenants in restraint of trade are in direct derogation of our common law, and as such are generally disfavored, even so, our courts have recognized that they are necessary to preserve the value of the intangible assets of good will within a business. *See, Kramer v. Old,* 119 N.C. 1, 25 S.E. 813 (1896). In order for such a covenant to be valid it must be reasonably necessary to protect the legitimate interest of the purchaser, must be reasonable with respect to time and territory, and must not interfere with the interest of the public. *Jewel Box Stores v. Morrow,* 272 N.C. 659, 158 S.E. 2d 840 (1968). Such covenants should be strictly construed, and they should receive a construction that will effectuate the intention of the parties, and the parties' intentions are to be determined by considering the whole of the covenants, rather than selected parts. *Faust v. Rohr,* 166 N.C. 187, 81 S.E. 1096 (1914).

Viewing the agreement as a whole, it is clear that it was the intention of the parties to prevent the sellers from engaging either directly or indirectly in a business which was in competition with the plaintiff. Research has revealed no North Carolina case which has decided whether the leasing of property to a competitor is a violation of a promise not to compete indirectly with a covenantee, however, the following cases may be helpful in making such a determination. In *Kramer v. Old,* 119 N.C. 1, 25 S.E. 813 (1896), the defendants sold their milling business to the plaintiff and entered into a covenant that they would "not continue in

the milling business." Defendants later secured stock in another milling company. Our Supreme Court found that such an acquisition was in violation of the covenant, but in dicta the court stated that "the courts will not restrain a party bound by such a contract from selling or leasing his premises to others to engage in the business which he has agreed to abstain from carrying on, or from selling to them the machinery or supplies needed in embarking in it. . . ." *Id.* at 12, 25 S.E. at 815.

Our Supreme Court has also found that it was not a violation of a covenant not to compete for a covenantor to sell part of his inventory to a third party, *see, Jefferson Reeves & Co. v. Sprague,* 114 N.C. 647, 19 S.E. 707 (1894), and, that it was not a violation of such a covenant for a covenantor to loan money to start a new firm to engage in competition with the covenantee. *See, Finch Brothers v. Michael,* 167 N.C. 322, 83 S.E. 458 (1914).

Plaintiff argues that these cases are not dispositive of this issue, because the covenants involved in those cases were not as broad or as specific as the covenant in the case *sub judice.* Instead, it urges acceptance of the reasoning of the California Court of Appeals found in *Dowd v. Bryce,* 95 Cal. App. 2d 644, 213 P. 2d 500 (1950). In *Dowd* the court found that the defendant's leasing of land to one of plaintiff's competitors was a violation of an agreement not to indirectly compete with the plaintiff since it was "one link in the chain which creates the very competition which it was the object of the clause . . . to prevent." *Id.* at 647, 213 P. 2d 502.

The reasoning of *Dowd* is inapposite here because the covenant which the parties signed was much broader than in the case at bar in that the parties specifically had agreed that the seller would not sell any real property to a competitor of or one contemplating becoming a competitor of the covenantee. The agreement evidences an intention by the parties to prevent any actions which might subject the covenantee to any form of competition. Such is not the case in the agreement entered into between plaintiff and the defendants.

Based upon the reasoning of our Supreme Court in the cases cited herein and the parties' intent as evidenced by the agreement, I conclude that the agreement entered into between the plaintiff and the defendants does not prohibit Bell from leasing

property to a competitor of the plaintiff. Therefore, I find no error in the trial court's denial of plaintiff's Motion for Summary Judgment.

Plaintiff also argues that the judgment is improper because it awards the defendants Triplette and Lewis a judgment for the accrued interest even though they had not counterclaimed for such a judgment. The record reveals that plaintiff is correct in its assertion that Triplette and Lewis have not counterclaimed for the interest due. The judgment, therefore, should be modified to award only defendant Bell a judgment for the principal sum of $4,500 and interest thereon as set forth in the judgment.